# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

FRANCISCAN ST. MARGARET HEALTH
*et al.*,

    *Plaintiffs*,

v.

ALEX M. AZAR II,

    *Defendant*.

Civil Action No. 18-cv-2 (TJK)

## MEMORANDUM OPINION

Plaintiffs, two hospitals that receive reimbursement from the federal government for serving Medicare patients, sought to challenge their adjustments for a given fiscal year before the Provider Reimbursement Review Board, the administrative body that hears such appeals. But instead of filing their own appeal, they requested that it reinstate a closed common-issue group appeal filed by another hospital and add them to it. The Board declined to reinstate the appeal because the issue raised by Plaintiffs was not the same as that in the group appeal. In this lawsuit, Plaintiffs allege that the Board's decision was arbitrary and capricious under the Administrative Procedure Act. The parties have filed cross-motions for summary judgment. Finding no reason to set aside the Board's determination under the APA, the Court will deny Plaintiffs' motion and grant Defendant's.[1]

---

[1] In reaching this conclusion, the Court considered all relevant filings including, but not limited to: ECF No. 1, Plaintiff's Complaint; ECF No. 12, Defendant's Answer; ECF No. 14, Plaintiffs' Motion for Summary Judgment and Memorandum in Support Thereof ("Pls.' Mot."); ECF No. 16, Notice of Filing of Certified Index of Administrative Record; ECF No. 18-1, Defendant's Opposition to Plaintiffs' Motion for Summary Judgment and Memorandum of Law in Support of Its Cross-Motion for Summary Judgment; ECF No. 19, Plaintiffs' Response in Opposition to Defendant's Cross-Motion for Summary Judgment and Reply to Defendant's Response to Plaintiffs' Motion for Summary Judgment ("Pls.' Reply"); ECF No. 22, Defendant's Reply in

I.   **Background**

   A.   **Statutory and Regulatory Scheme**

Plaintiffs Franciscan St. Margaret Health and Franciscan St. Anthony Memorial Health Centers are hospitals entitled to reimbursement from the federal government for serving patients enrolled in Medicare and Medicaid under Title XVIII of the Social Security Act ("Medicare Act"), 42 U.S.C. § 1395 *et seq.* The statutory and regulatory scheme governing these reimbursements is well-trod ground in this Circuit.

   1.   **Reimbursement Under the Medicare Act**

In another case reviewing an administrative decision about a hospital's reimbursement for serving low-income patients, the D.C. Circuit explained:

> Hospitals receive reimbursement based on prospectively determined national and regional rates, not on the actual amount they spend, and they also receive payment adjustments for some hospital-specific factors. *See* [42 U.S.C.] § 1395ww(d)(2) & (d)(5)(F)(i)(I). The adjustment at issue in this case is the "disproportionate share hospital" (DSH) adjustment, under which the government pays more to hospitals that "serve[] a significantly disproportionate number of low-income patients." *Id.* § 1395ww(d)(5)(F)(i)(I). This provision is based on Congress's judgment that low-income patients are often in poorer health, and therefore costlier for hospitals to treat.

*Catholic Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 916 (D.C. Cir. 2013) (alteration in original).

The DSH adjustment is the sum of "two fractions, often called the 'Medicare fraction and the 'Medicaid fraction.'" *Id.* "The Medicare and Medicaid fractions represent two distinct and separate measures of low income—SSI (i.e., welfare) and Medicaid, respectively—that when summed together, provide a proxy for the total low-income patient percentage." *Id.* "SSI" refers to the supplementary security income benefits available under Medicare. *Id.* The Medicare

---

Support of Cross-Motion for Summary Judgment; and ECF No. 23, Joint Appendix for Parties' Motions for Summary Judgment ("AR __").

fraction is sometimes referred to as the "SSI fraction." *See Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 150 (2013).

The D.C. Circuit has summarized the formulas for determining each of these two fractions that, together, comprise a hospital's DSH adjustment:

|  | Medicare fraction | Medicaid fraction |
| --- | --- | --- |
| Numerator | Patient days for patients "entitled to benefits under part A" and "entitled to SSI benefits" | Patient days for patients "eligible for [Medicaid]" but not "entitled to benefits under part A" |
| Denominator | Patient days for patients "entitled to benefits under part A" | Total number of patient days |

*Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 3 (D.C. Cir. 2011).

### 2. The Provider Reimbursement Review Board

The federal government outsources the calculation of DSH adjustments, along with other types of reimbursement, to private contractors. *See* 42 C.F.R. §§ 405.1801(b)(1), 421.100(a). Once a contractor calculates a provider's reimbursement amount for the fiscal year, it issues the provider a Notice of Program Reimbursement (NPR). *Id.* § 405.1803. Contractors may "reopen" those NPRs, to revise or correct them, within three years. *Id.* § 405.1885. If the contractor makes any change to an NPR, it will issue a Revised Notice of Program Reimbursement (RNPR) and explain its reason for the changes. *Id.* § 405.1887(c). If a healthcare provider seeks to appeal a contractor's calculation of its reimbursement, it may appeal the relevant NPR or RNPR to the Provider Reimbursement Review Board. 42 U.S.C. § 1395oo(a); *see also Baptist Mem'l Hosp.-Golden Triangle v. Sebelius*, 566 F.3d 226, 227 (D.C. Cir. 2009).

Two constraints on appeals are relevant here: the scope of the Board's review of an RNPR, and the circumstances under which healthcare providers may appeal as a group rather than individually. As for the former, under the applicable regulations, when a provider appeals

3

an RNPR as opposed to an NPR, it may appeal "[o]nly those matters that [have been] specifically revised." 42 C.F.R. § 405.1889(b)(1). Conversely, any matter that has not been "specifically revised (including any matter that was reopened but not revised) may not be considered in any appeal of" the RNPR. *Id.* § 405.1889(b)(2). As for group appeals, under the Medicare Act the Board may hear appeals by groups of providers if, among other things, their appeals "involve a common question of fact or interpretation of law or regulations." 42 U.S.C. § 1395oo(b). Under Department of Health and Human Services regulations, these constraints are jurisdictional. If a provider presents an appeal that does not comply with them, the Board must dismiss the appeal for lack of jurisdiction. 42 C.F.R. § 405.1840(b), (c)(2).

The Board has also issued procedural rules governing its appeals. 42 U.S.C. § 1395oo(e); *see* Provider Reimbursement Review Board Rules ("PRRB Rules"), https://www.cms.gov/Regulations-and-Guidance/Review-Boards/PRRBReview/Downloads/PRRBRULES_07_01_2015.pdf. Some of those rules govern how providers must frame the issues they seek to appeal. Rule 8.1, recognizing that "some issues may have multiple components," requires that "each contested component must be appealed as a separate issue and described as narrowly as possible . . . ." And Rule 8.2 lists "dual eligible, general assistance, HMO days, etc." as examples of "separate issues" that may arise when a provider challenges its DSH adjustment. Failure to comply with these rules, as with the statutory and regulatory constraints on the Board's jurisdiction, permits the Board to dismiss an appeal. *See, e.g.*, *Baptist Mem'l Hosp.*, 566 F.3d at 229.

  B.  **The St. Francis Common-Issue Group Appeal**

In March 2015, Franciscan St. Francis Health Indianapolis ("St. Francis")—a hospital owned by the same entity as Plaintiffs—filed an appeal with the Board. AR 76. The appeal purported to be a common-issue group appeal, although at the time it involved only a single

4

hospital. *Id*. The issue on appeal was the treatment of St. Francis's patient days—also known as "dual-eligible" days—for those patients eligible for both Medicaid and Medicare but who have exhausted their Medicare benefits. At least in theory, those days could be included in the numerator for either of the fractions that comprise the DSH adjustment. *See* AR 93. But since 2004, the Department of Health and Human Services has interpreted the Medicare Act to include dual-eligible days in the Medicare fraction numerator, and contractors have calculated the DSH adjustment accordingly. *Id.*; *see Catholic Health*, 718 F.3d at 918. St. Francis's appeal sat dormant for a few years. In August 2017, St. Francis requested that the Board transfer its appeal to another common-issue group appeal, and the Board promptly did so. AR 64–65. The Board then closed St. Francis's common-issue group appeal, which by then lacked any members. *Id.*

### C. Plaintiffs' Attempt to Reinstate and Join the St. Francis Appeal

Plaintiffs received RNPRs in March and April 2017. AR 49–50, 59–60. In both instances, the contractor revised its calculation by reducing the number of Medicaid-eligible days in the numerator of Plaintiffs' Medicaid fractions. *See* AR 50 (removing 115 days from Franciscan St. Margaret Health's Medicaid fraction); AR 60 (removing 12 days from Franciscan St. Anthony Memorial Health Centers' Medicaid fraction). In the latter case, an inspector general's investigation led the contractor to do so. *See* AR 60. But rather than filing an appeal of their own, in September of that year Plaintiffs and St. Francis requested that the Board reinstate the St. Francis common-issue group appeal, transfer St. Francis's appeal back into it, and add Plaintiffs to it as well. AR 43. Counsel for St. Francis and Plaintiffs asserted that they had been unaware when the St. Francis appeal had been closed "that there were pending DSH reopenings for two related providers"—that is, Plaintiffs. *Id.* They also notified the Board of Plaintiffs' RNPRs that they sought to appeal.

5

The contractor that had issued Plaintiffs' RNPRs objected to Plaintiffs reinstating and joining the St. Francis common-issue group appeal, arguing that while it had reduced the number of Plaintiffs' Medicaid-eligible days in the RNPRs, it had not altered the dual-eligible days in their Medicare fraction—the subject of St. Francis's appeal. AR 41. Because the two situations did not present common questions, it urged the Board to decline to reinstate the St. Francis appeal and add Plaintiffs to it. *Id.* In response, Plaintiffs asserted that the issues were related because both arguably implicated the Medicaid fraction, and ultimately affected each hospital's DSH adjustment. AR 4–5. The Board, however, agreed with the contractor, and concluded that Plaintiffs could not join the St. Francis common-issue group appeal because they were "appealing from RNPRs which did not specifically adjust the SSI Fraction Dual Eligible Days issue." AR 2. And unlike the St. Francis appeal, the RNPRs did not involve the contractor's calculation of the Medicare fraction. AR 3. The Board therefore denied their request to reinstate and join that appeal. *Id.*

## II.   Legal Standard

This Court has jurisdiction to review final actions by the Board pursuant to 42 U.S.C. § 1395oo(f)(1), which incorporates the review provisions in the Administrative Procedure Act (APA), 5 U.S.C. § 700 *et seq.* Under the APA, the Court does not apply the typical standards for summary judgment set forth in Federal Rule of Civil Procedure 56(a); instead, "the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Citizens for Responsibility & Ethics in Wash. v. SEC*, 916 F. Supp. 2d 141, 145 (D.D.C. 2013). That standard of review is fairly deferential; the Court will

not set aside an agency action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

## III. Analysis

The Court easily concludes that it was not arbitrary and capricious for the Board to have found that Plaintiffs' RNPRs and the St. Francis common-issue group appeal did not present a common question of fact or law and, on that basis, to have declined to reinstate the common-issue group appeal and add Plaintiffs to it.

As explained above, the Board may decline to hear any appeal that does not comply with the Medicare Act, its applicable regulations, or its procedural rules.  *See* 42 C.F.R. § 405.1840(b), (c)(2); *Baptist Mem'l Hosp.*, 566 F.3d at 229.  Under the statute, for multiple hospitals to proceed in a common-issue group appeal, the appeal must present a question of fact or interpretation of law or regulations common to all of them.  42 U.S.C. § 1395oo(b).  And the Board's rules require providers to define issues "as narrowly as possible."  PRRB Rule 8.1.

The issue in the St. Francis common-issue group appeal was the contractor's handling of its dual-eligible days.  AR 93.  In contrast, Plaintiffs were entitled to appeal only those matters "specifically revised" in their RNPRs, 42 C.F.R. § 405.1889(b)(1), so their only appealable issue concerned their contactors' reduction of their Medicaid-eligible days.  There is no evidence in the record that those reductions had anything to do with dual-eligibility; to the contrary, the patient days at issue were found to be Medicaid *ineligible*.  Therefore, the Board concluded, Plaintiffs' RNPRs "did not specifically adjust the SSI Fraction Dual Eligible Days issue."  AR 2. As such, the Board reasonably determined that the two situations did not present "common question[s] of fact or interpretation of law or regulations," 42 U.S.C. § 1395oo(b), that may be appealed together.

Plaintiffs offer two arguments that the Board acted unlawfully, but neither has merit. First, they maintained to the Board, and at least in passing to this Court, *see* Pls.' Mot. at 5; Pls.' Reply at 4, that the St. Francis appeal raised the question of whether dual-eligible days were properly accounted for in *either* its Medicare or Medicaid fraction. AR 93–94. Therefore, they argue, because Plaintiffs' RNPRs adjusted their Medicaid fraction, they were entitled to join the St. Francis appeal. *Id.* But to repeat: there is no evidence in the record that Plaintiffs' RNPRs raised the issue of dual-eligible days. And even assuming St. Francis's appeal about its dual-eligible days could be construed as implicating its *Medicaid* fraction, the Board was well within its discretion to have found that insufficient to permit Plaintiffs to join it. To start with, that two appeals involve Medicaid fractions would hardly, on its own, seem to qualify them as presenting common questions of fact or interpretations of law, especially given that the fraction contains subparts. Moreover, the Board's rules require providers to define the issues presented in their appeals "as narrowly as possible" and hold up dual-eligible days—an issue not presented by Plaintiffs' RNPRs—as an example of a narrowly-defined issue. PRRB Rules 8.1, 8.2. And finally, it is undisputed that Plaintiffs' RNPRs did not revise their Medicare fractions, which was in large part the terrain on which St. Francis challenged the treatment of its dual-eligible patient days. AR 93–94. On this record, the Court cannot conclude that the Board's determination that the two situations did not present a "common question of fact or interpretation of law," 42 U.S.C. § 1395oo(b), was arbitrary and capricious. AR 2.

Plaintiffs' briefing focuses on a second, and even less worthy, argument: that the Board should have permitted them to join the St. Francis appeal because the provider's *entire* DSH adjustment was at issue in both circumstances. *See* Pls.' Mot. at 9; Pls.' Reply at 5. In their view, that their RNPRs adjusted only their Medicaid (but not their Medicare) fraction does not

matter, because the RNPRs altered their overall DSH adjustment. But for the reasons already explained, such an expansive view of Plaintiffs' right to join a common-issue group appeal is at odds with the Medicare Act, pertinent regulations, and the Board's rules. Indeed, such a view would all but do away with the statute's requirement that such appeals present "common question[s] of fact or interpretation of law." 42 U.S.C. § 1395oo(b). The Board's rejection of it was not arbitrary and capricious.[2]

## IV. Conclusion

For all the above reasons, the Board's denial of Plaintiffs' request to reinstate the St. Francis appeal and permit them to join it was not arbitrary and capricious. Accordingly, the Court will deny Plaintiffs' Motion for Summary Judgment, ECF No. 14, and grant Defendant's Cross-Motion for Summary Judgment, ECF No. 18. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 17, 2019

---

[2] Plaintiffs' position also does not cohere with the requirement under 42 C.F.R. § 405.1889(a) that only those matters that are "specifically revised in" an RNPR may be appealed. The Seventh Circuit cited this requirement in concluding that an RNPR that adjusts only one fraction does not permit a provider to appeal the other. *See Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 855 (7th Cir. 2009).